**LaVoy Rexford ORNER, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 78–1236.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1978.

Decided July 13, 1978.

Donald G. Thompson, of Bauer, Galter & Geier, Lincoln, Neb., for appellant; Paul G. Galter, Lincoln, Neb., on brief.

Richard J. Nolan, Asst. U. S. Atty., Lincoln, Neb., for appellee; Edward G. Warin, U. S. Atty., Omaha, Neb., on brief.

Before GIBSON, Chief Judge, and HEANEY and ROSS, Circuit Judges.

GIBSON, Chief Judge.

This is another of an increasing number of cases in which a criminal defendant, dissatisfied with the sentence rendered after a plea of guilty, sought to vacate the sentence and withdraw his guilty plea. Defendant LaVoy Rexford Orner pled guilty in the United States District Court for the District of Nebraska[1] to two counts of a twelve-count indictment charging him, along with his wife and others, with devising a scheme to defraud using interstate communication by wire in violation of 18 U.S.C. §§ 2 and 1343. The court accepted the guilty plea and dismissed the other ten counts. After a presentence investigation and a hearing in open court on the sentencing facet of the case, the defendant was sentenced to a four-year term of imprisonment on each count, the sentences to be concurrent. On March 23, 1978, the trial court denied defendant's motions to vacate sentence and judgment, to withdraw guilty plea, for a new trial, and for a stay of execution until April 14, 1978. The defendant then filed notice of appeal. On his appeal he has apparently dropped his request to withdraw his guilty plea but still seeks to have his overall sentence vacated and the case remanded for resentencing before a different judge.

Prior to the sentencing hearing the presentence report was made available to the defendant and his counsel, and the defendant was allowed allocution in accordance with the requirements of Rule 32(a)(1) of

1. The Honorable Warren K. Urbom, Chief Judge, District of Nebraska.

the Federal Rules of Criminal Procedure.[2] Defendant's wife, a co-defendant in the charges, was permitted to speak on behalf of the defendant. Defense counsel concluded his summation by recommending a suspended sentence. The Government responded, utilizing its right under Rule 32 and in line with its obligations to society and to the court, by presenting its views on the defendant's request for a suspended sentence. It read portions of statements of two of the victims of the crimes to which the defendant had pled guilty, plus three statements of a former employee of the defendant and a statement by an alleged victim of one of the dismissed counts of the indictment. The Government clearly stated to the court that the statements were paraphrased and contained threats which were meant to show that the defendant employed bullying tactics, rather than to contend that the defendant actually jeopardized the persons threatened.[3] Also noted was the fact that one of the statements was given by a former co-defendant given pretrial diversion. The Government then recommended imposition of the maximum sentence. Both defendant and his counsel responded to the Government's remarks, defendant stating that he had not actually made direct threats, although he had "made several remarks that he [a certain individual] should be shot." Chief Judge Urbom then informed those present that he had received two letters on behalf of defendant, and noted defendant's prior record and that the information presented suggested that the two admitted counts were not necessarily isolated events. The court specifically advised defendant that he would be sentenced only on the two admitted counts and then imposed the challenged sentences.

Defendant now strenuously contends that his fifth and fourteenth amendment rights were violated when the Government attorney spoke to the court and read selected portions of statements not included in the presentence report.

We find that the procedure followed by the District Court comported with the requirements of Rule 32(a)(1). As permitted by that rule, both parties took advantage of the opportunity to present information relative to sentencing. Defendant and his counsel were permitted to challenge and defend against all materials presented. They were confronted in open court with the adverse matters presented by the presentence report, the defendant's prior record, and the Government's statement and position in the sentencing process. In *Williams v. Oklahoma*, 358 U.S. 576, 78 S.Ct. 421, 3 L.Ed.2d 516 (1959), the United States Supreme Court recognized that the sentencing judge is authorized, if not required, to consider not only all of the mitigating circumstances, such as those urged by defendant, his counsel, and his wife, but also all of the aggravating circumstances, as here in part noted by the Government.

The information presented was definitely within the relevant realm of inquiry in a sentence proceeding. The Eighth Circuit has acknowledged that wide discretion and prerogative must be accorded the court in making a sentencing determination. *United States v. Durbin*, 542 F.2d 486, 489 (8th Cir. 1976) held:

In sentencing, the court may conduct a broad inquiry into the defendant's background, generally unlimited in both the source and type of information. *See Woosley v. United States*, 478 F.2d 139, 143 (8th Cir. 1973). *See also United*

**2.** Fed.R.Crim.P. 32(a)(1) provides in pertinent part that:

Before imposing sentence the court shall afford counsel an opportunity to speak on behalf of the defendant and shall address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment. The attorney for the government shall have an equivalent opportunity to speak to the court.

**3.** The Government read portions of statements made by other potential defendants taken three years earlier during investigation of defendant's activities that indicated defendant intended to hire a "hit" man to kill a state government official, threatened serious bodily harm to others, and suborned perjury, along with other information obtained from victims of defendant's criminal activities.

States v. Haygood, 502 F.2d 166, 169 (7th Cir. 1974), cert. denied, 419 U.S. 1114, 95 S.Ct. 791, 42 L.Ed.2d 812 (1975); United States v. Trigg, 392 F.2d 860, 864 (7th Cir. 1968). For example, the court may consider the defendant's character, past life and habits, age, health, and also his reaction to prior punishment. See generally 2 C. Wright & A. Miller, Federal Practice and Procedure § 526 (1969).

■ Defendant, however, contends that the United States Supreme Court opinion in Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), indicates that due process requires full disclosure in advance of all information presented to a sentencing court. Due process is flexible and calls for such procedural protections as the particular situation demands. Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In the context of sentencing, due process requires balancing the need for reliability with the need to permit consideration of all pertinent information. Traditionally, rigid adherence to restrictive rules of evidence has not applied to the sentencing process because of the significance attached to providing information in order to individualize sentences. See Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

In Hess v. United States, 496 F.2d 936 (8th Cir. 1974), this court examined whether failure to disclose the exact sources of information contained in a prosecutor's lengthy oral report made in open court violated due process. Judge Matthes noted that

while the issue of disclosure of presentence information to the defense continues to be a subject of robust debate, this court has yet to require the trial judge, as a matter of due process, to disclose the report in its entirety to the defendant. Nor will we declare the failure to disclose the sources of information of the prosecutor's report in this case a violation of due process when appellants neither requested such disclosure nor objected to the accuracy of the substance of the report as it was revealed to them.

Id. at 940 (citations omitted). Although in Hess this court did not reach the issue of whether advance disclosure was required, the logical import of the holding would seem to be that disclosure during the sentencing hearing is generally sufficient to provide a defendant with a meaningful opportunity to be heard.

This does not mean that the sentencing hearing will always be a sufficient opportunity. While as a general rule a sentence imposed by a federal district judge, if within statutory limits, is not subject to review, United States v. Tucker, 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); Dorszynski v. United States, 418 U.S. 424, 441, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974); Gore v. United States, 357 U.S. 386, 393, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), sometimes it will be necessary to review the record to assure fairness. In particular, review will be granted under certain limited circumstances, as where there is a possibility that the sentence was imposed on the basis of false information or false assumptions concerning the defendant. In those cases the procedure to be followed lies within the sound discretion of the sentencing judge, and the exercise of discretion in this regard will not be overturned in the absence of plain error or an abuse of that discretion. See United States v. Sneath, 557 F.2d 149 (8th Cir. 1977); United States v. Robins, 545 F.2d 775, 779 (2d Cir. 1976).

The cases cited by defendant all relate to situations where misinformation was supplied to the court which the defendant did not have an opportunity to rebut, or nondisclosed sources gave adverse information to the court of which the defendant was not apprised until, at the earliest, after the sentencing decision had been made. Here no misinformation at all was presented, let alone misinformation of a constitutional magnitude. The defendant made no claim during the sentencing process that the information received did not have a basis in fact, although he did dispute inferences or interpretations to be drawn from his statements and actions. As noted, all of this information was heard by defendant and

his counsel in open court and defendant and his counsel were given a full opportunity to respond which they exercised as best they could. The information was adverse and could only be countered by defendant's own explanation to the extent that the court gave credit to his explanation. There is no evidence of either plain error or an abuse of discretion.

In summary, the hearing record indicates that the sentencing process was conducted in a fair and impartial manner. Both parties were allowed to address the court at length and the court gave each side full opportunity to present whatever statements and information they felt were relevant. The information presented in the prosecutor's allocution was not so lengthy as to preclude comprehension and explanation. Explanations of a sort were made. Further, there is no indication that the statements had any unique importance in light of the defendant's prior record and the detailed presentence report. The sentences rendered, in fact, were relatively light in consideration of the pervasive fraud to which the defendant pled guilty. Defense counsel did not seek an adjournment of the sentencing hearing, probably for tactical reasons. There was little that could be done to counter the Government's presentation except statements by the defendant himself. As Chief Judge Urbom found in his memorandum and order denying defendant's post-sentencing motion: "No claim is made by the defendant in the present case that any information which the court received during the sentencing process was misinformation."

The defendant and his counsel well knew, at the time a plea was entered to the two admitted counts, the range of punishment for judgments of conviction under those counts and that the plea of guilty acknowledged the commission of the criminal acts charged. The sentence imposed was within the statutory guidelines. Fairness to the public and the public purse demand that a convicted offender present a clear and convincing case of abuse of discretion on the part of the sentencing judge or a patent

violation of a constitutional guarantee to warrant setting aside a sentence. We find here no abuse of discretion nor any violation of a constitutional guarantee.

Judgment affirmed.